SUMMARY ORDER
Petitioners Dritan Gaci, Barta Gaci, Fabiona Gaci, and Dario Gaci, natives and citizens of Albania, seek review of a December 20, 2007 order of the BIA affirming the October 30, 2006 decision of Immigration Judge (“IJ”) Michael W. Straus denying their application for asylum, withholding of removal, and relief under the Convention Against Torture (“CAT”). In re Dritan/Barta/Fabiona/Dario Gaci, Nos. A99 560 425/426/427/428 (B.I.A. Dec. 20, 2007), aff'g Nos. A99 560 425/426/427/428 (Immig. Ct. N.Y. City, Oct. 30, 2006). We assume the parties’ familiarity with the underlying facts and procedural history in this ease.
When the BIA summarily affirms the decision of the IJ without issuing an opinion, see 8 C.F.R. § 1003.1(e)(4), we review the IJ’s decision as the final agency determination. See Shunfu Li v. Mukasey, 529 F.3d 141, 146 (2d Cir.2008). We review the agency’s factual findings, including adverse credibility findings, under the substantial evidence standard. See 8 U.S.C. § 1252(b)(4)(B); see also Corovic v. Mukasey, 519 F.3d 90, 95 (2d Cir.2008). We review de novo questions of law, including what quantum of evidence will suffice to discharge an applicant’s burden of proof. See, e.g., Passi v. Mukasey, 535 F.3d 98, 101 (2d Cir.2008).
We find that the IJ’s analysis constituted a sufficiently explicit adverse credibility determination under the REAL ID Act. See Zaman v. Mukasey, 514 F.3d 233, 237-38 (2d Cir.2008). We further find that the adverse credibility determination was supported by substantial evidence. When, as here, an adverse credibility finding is based largely on implausibility, “we review the entire record, not whether each unusual feature of the account can be explained or rationalized.” Ying Li v. B.C.I.S., 529 F.3d 79, 82 (2d Cir.2008). On the basis of the entire record, we conclude that the IJ’s implausibility finding was proper. The account that emerges is that Gaci’s father was seen as a traitor and murdered by Communist sympathizers in 1997, yet he was able to retire in 1991 with his pension during a time when the Communists were still in power. Gaci claims that those persons have also sought to harm him, yet the country reports indicate that the influence of the Communists has waned considerably with the end of their regime. He further claims that he was targeted by former Communists because he was an outspoken critic of the government and the leader of a new political party that had 10,000 registered members, yet he failed to provide any evidence that he was known to anyone in Albania for any political activity. Under such circumstances, the IJ properly found that Gaci’s testimony did not hang together plausibly with the other evidence in the record. See Ying Li, 529 F.3d at 82-83.
Additionally, the IJ properly found that Gaci’s claims of past persecution and a well-founded fear of persecution were not plausible because: (1) his brother continues to live in Albania unharmed, see Melgar de Torres v. Reno, 191 F.3d 307, 313 (2d Cir.1999) (finding that an asylum applicant’s claim of a well-founded fear was diminished where his relatives continued to live in his native country); (2) the background reports do not indicate that any rivalries that existed during the Communist era are still of concern today; rather, they show that the former Communists *508 have become powerless in Albania, see Tu Lin v. Gonzales, 446 F.3d 395, 400 (2d Cir.2006) (holding that State Department reports are probative in evaluating an applicant’s credibility); (3) while Gaci asserted that his father was killed in July 1997 because of his political activities during the Communist regime, his father never lost his job in the state security service and there was no evidence that he was treated harshly during the Communist regime, see 8 U.S.C. § 1158(b)(1)(B)©; Xiao Ji Chen v. U.S. Dep’t of Justice, 471 F.3d 315, 341 (2d Cir.2006) (finding that the absence of corroboration in general makes an applicant unable to rehabilitate testimony that has already been called into question); (4) while Gaci claims that he was an outspoken critic of the government and attempted to form a new political party in 1996 called the New Democratic Party, he failed to corroborate this assertion, see Xiao Ji Chen, 471 F.3d at 341.
Gaci argues that the IJ ignored corroborating evidence in the record, including the death certificate of Luán Gaci, indicating that Luán Gaci had been shot execution-style, as well as the testimony of Professor Kideekel and country reports, indicating that the acts of persecution that had allegedly occurred against his family were the result of blood feuds, which bore a political dimension. This argument, however, is unavailing. While the death certificate indicates that Gaci’s father was shot in the head, it provides no context for his death. See Melgar de Torres v. Reno, 191 F.3d 307, 314 (2d Cir.1999) (finding that evidence of an increase in general crime does not support an asylum claim). Moreover, the 2004 U.S. Department of State country report says nothing to connect the feuds to political rivalry. See Tu Lin, 446 F.3d at 400. Furthermore, even assuming the truth of Kideckel’s assertion that political rivalry can continue throughout generations, his conclusory testimony does not establish that Gaci’s father was killed on account of his political beliefs, nor does it demonstrate that Gaci was or would be targeted for that reason.
Gaci argues that the IJ erred in failing to consider his explanation that the government refused to register his party, citing to the 2004 U.S. Department of State report for support. However, that portion of the report belies his assertion, as it indicates that the government “routinely” granted registration to political parties. Gaci also asserts that the IJ failed to consider evidence in the record that the government and the police frequently persecuted journalists. This argument is also unavailing, as Gaci himself testified that he never succeeded in publishing any of the articles that he wrote, and thus, he fails to demonstrate how he would be identified as a journalist. While Gaci explained that all of the newspapers refused to publish any of his letters, the IJ properly cited the State Department report, which indicates that there were approximately 200 publications throughout the country that often served varying political interests. The IJ reasonably found that even if Gaci sought to publish articles that were critical of the government or any other political party, he could have found a newspaper to accommodate his views. See Tu Lin, 446 F.3d at 400. In the face of the country report, Gaci’s explanation was less than compelling, and the IJ was not required to credit it. See Majidi v. Gonzales, 430 F.3d 77, 80-81 (2d Cir.2005).
While the IJ’s decision was not without error, remand would be futile in this case because we can confidently predict that the IJ would find that Gaci was not credible absent these erroneous findings. See Xiao Ji Chen, 471 F.3d at 335. The IJ’s finding that Gaci’s “overall claim” was implausible is supported by the country reports in the record. See Ying Li, 529 F.3d at 83.
*509 Because the only evidence of a threat to Gad’s life or freedom depended upon his credibility, the adverse credibility determination in this case necessarily precludes success on his claims for withholding of removal and CAT relief, where all three claims were based on the same factual predicate. See Paul v. Gonzales, 444 F.3d 148, 156 (2d Cir.2006). We need not reach the Id’s changed country conditions finding, as the adverse credibility determination is dispositive here.
For the foregoing reasons, the petition for review is DENIED. As we have completed our review, any stay of removal that the Court previously granted in this petition is VACATED, and any pending motion for a stay of removal in this petition is DISMISSED as moot. Any pending request for oral argument in this petition is DENIED in accordance with Federal Rule of Appellate Procedure 34(a)(2), and Second Circuit Local Rule 34(b).